UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARRY J. KUGHN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 2:21-cv-00797-SGC |
| STONEMOR PARTNERS, L.P., | ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION[1]

The plaintiff, Barry Kughn, filed this employment discrimination action under 42 U.S.C. § 1981,[2] naming StoneMor Partners, L.P., as the sole defendant. (Doc. 1 at 1).[3] StoneMor moved to dismiss Kughn's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. (Doc. 8). The motion is fully briefed and ripe for adjudication. (Docs. 15, 19). For the reasons discussed below, StoneMor's motion is due to be denied.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 17).

[2] Kughn's complaint also refers once to Title VII, 28 U.S.C. § 2000e *et seq*; however, the substance of Kughn's complaint addresses only § 1981. Also, Kughn does not allege he exhausted his administrative remedies, and he refers to the four-year statute of limitations applicable to § 1981. Consequently, it does not appear Kughn states any claims under Title VII.

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

## I.   Allegations of Kughn's Complaint

Kughn, a White male, began working for StoneMor in October 2010. (Doc. 1 at 2). Kughn was soon promoted to a managerial position, which he performed well. (Doc. 1 at 2).

In October 2018, a subordinate mortician, Jennifer Floyd, a Black female, became insubordinate and had performance issues. (Doc. 1 at 2). Kughn and District Manager Robert Shoemaker, to whom Kughn reported, counseled Floyd on several occasions. (Doc. 1 at 2). At some point, Floyd claimed Kughn discriminated against and harassed her. (Doc. 1 at 2).

Kughn reported to Shoemaker that Floyd was harassing other employees based on their race. (Doc. 1 at 2). Shoemaker instructed Kughn to discipline Floyd and to instruct employees to contact HR to complain about Floyd, which they did. (Doc. 1 at 2-3).

In the summer of 2019, Shoemaker placed Kughn on a performance improvement plan. (Doc. 1 at 3). At the same time, Kughn prepared a performance improvement plan for Floyd, as instructed by Shoemaker. (Doc. 1 at 3).

In July 2019, James Johnson, a White male, reported to Kughn and Shoemaker that Floyd was discriminating against and harassing him, and he discussed filing EEOC charges against her. (Doc. 1 at 3). Shoemaker requested Johnson not file

charges against Floyd but, instead, allow Shoemaker and Kughn to handle the issue. (Doc. 1 at 3). Shoemaker did not address this situation with Floyd. (Doc. 1 at 3).

A month later, Shoemaker terminated Kughn because of his harassment of Floyd and because employees were complaining to HR about Floyd, even though Shoemaker had requested employees submit their complaints about Floyd to HR. (Doc. 1 at 3). Floyd remained employed with StoneMor. (Doc. 1 at 3).

Kughn filed this lawsuit on June 11, 2021, asserting he was terminated in violation of § 1981's prohibition against race discrimination and retaliation. (Doc. 1). Kughn claims he was treated differently than Floyd, who was similarly situated to him, because of his race. (Doc. 1 at 4). Floyd engaged in similar or worse conduct than Kughn but was not terminated. (Doc. 1 at 4). Kughn also alleges he was fired in retaliation for his complaints to Shoemaker about Floyd's race discrimination and harassment. (Doc. 1 at 5).

## II.   Standard of Review

In considering a motion to dismiss, the court must accept the plaintiff's allegations as true and construe them in a light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). Rule 12(b)(6) must be considered against the backdrop of Rule 8(a)(2), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

At the pleading stage of an employment case, a plaintiff asserting a disparate treatment claim involving tangible employment actions is not required to allege facts sufficient to make out a *prima facie* case under the *McDonnell Douglas* framework.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002).[4] Nonetheless, he must satisfy the pleading standard articulated by *Twombly* and *Iqbal*, which requires him to allege enough facts, accepted as true, to suggest intentional race discrimination. *Davis*, 516 F.3d at 974.

## III. Discussion

StoneMor moves to dismiss both counts of Kughn's complaint under Rule 12(b)(6). First, StoneMor argues Kughn has failed to state a claim for race discrimination because he has not alleged a proper comparator under the *McDonnell Douglas* burden shifting framework. Second, StoneMor argues Kughn has failed to plausibly suggest he was terminated in retaliation for reporting Floyd's discriminatory and harassing conduct for two reasons—Kughn's report of Floyd's behavior does not qualify as a protected activity, and Kughn has not suggested a causal connection between his report of Floyd's behavior and his termination.

### A. Race discrimination

Section 1981 prohibits race-based employment discrimination, as well as retaliation for opposing or participating in an investigation of race-based

---

[4] *Swierkiewicz's* holding that the *prima facie* case is not a pleading standard has been recognized by the Eleventh Circuit even though it was based on an older pleading standard. *See McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 n.4 (11th Cir. 2014) ("We note that *Twombly* effectively overruled *Swierkiewicz* when it rejected the old standard for dismissal set out in *Conley v. Gibson*, 355 U.S. 41[ ] (1957)). But this had no impact on *Swierkiewicz's* statement that a plaintiff is not required to plead a *prima facie* case of discrimination in order to survive dismissal.")

employment discrimination. *Milton v. Milligan*, 2013 WL 828591, at *1 (N.D. Fla. Mar. 5, 2013) (noting § 1981 explicitly prohibits race-based employment discrimination and implicitly prohibits retaliation for asserting rights under the statute). Although Kughn brings his complaint under § 1981, the Eleventh Circuit "has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010); *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010) (using Title VII cases and § 1981 cases interchangeably).

There are two theories of intentional discrimination in the employment context: disparate treatment discrimination and pattern or practice discrimination.[5] *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1322 (11th Cir. 2006). Disparate treatment discrimination claims come in two types: (1) those involving tangible employment actions, such as discipline or termination, and (2) those based on a hostile work environment that alters the terms and conditions of employment, even though the employee does not suffer a tangible employment action. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010). The court construes

---

[5] The Eleventh Circuit has indicated claims of pattern or practice discrimination are generally brought either by the EEOC or a class of private plaintiffs. *See E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Therefore, to the extent Kughn asserts a pattern and practice discrimination claim, it fails because the EEOC has not joined this action and Kughn is not proceeding on behalf of a class of plaintiffs. *See Skelton v. Birmingham Airport Auth.*, No. 2:18-cv-012040-AKK, 2018 WL 6523172, at *2 n.1 (N.D. Ala. Dec. 12, 2018) (dismissing pattern and practice discrimination claim asserted by individual plaintiff); *Banks v. Ackerman Sec. Sys., Inc.*, No. 109CV0229CC, 2009 WL 974242, at *3 (N.D. Ga. Apr. 10, 2009) (same).

Count I of the complaint—in which Kughn asserts his termination is race discrimination—as asserting a disparate treatment claim involving tangible employment actions.

Where, as here, a plaintiff attempts to establish a disparate treatment claim involving tangible employment actions with circumstantial evidence of discrimination, a court typically uses the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate the claim. *Burke-Fowler*, 447 F.3d at 1323; *see also Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (holding *McDonnell Douglas* framework is not *sine qua none* for plaintiff to survive summary judgment but, rather, triable issue of fact exists if plaintiff presents convincing mosaic of circumstantial evidence that allows inference of intentional discrimination).[6] Under this framework, a plaintiff establishes a *prima facie* case by showing (1) he belongs to a protected class, (2) he was subjected to an adverse employment action, (3) his

---

[6] A plaintiff may also establish a disparate treatment claim with direct evidence of discrimination. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id.* at 1086 (internal quotation marks omitted). Kughn alleges no statement or conduct that constitutes direct evidence of race-based discrimination. *Compare Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting Eleventh Circuit has held documents stating "'Fire Early – he is too old'" and "'Fire Rollins – she is too old'" constitute direct evidence of discrimination), *with Tomczyk v. Jocks & Jills Rests., LLC*, 198 F. App'x 804, 810 (11th Cir. 2006) (holding use of racially derogatory comments not directly linked to decision to terminate plaintiff served as circumstantial evidence of discrimination at best).

employer treated similarly situated employees outside his class more favorably, and (4) he was qualified to do the job. *Burke-Fowler*, 447 F.3d at 1323.[7]

Here, the parties dispute whether Kughn has plausibly alleged Floyd is a similarly situated comparator. Kughn asserts both he and Floyd were the subjects of harassment and discrimination complaints, but he was fired, and Floyd was not. StoneMor believes Floyd is not a proper comparator because she was not "similarly situated in all material respects" to Kughn, as required by the Eleventh Circuit's opinion in *Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019). (Doc. 8 at 6).

In *Lewis*, the court clarified that a proper comparator should be "similarly situated in all material respects" to the plaintiff. *Id.* at 1227. This does not require the plaintiff and his comparator to be identical except for race or gender, nor must they have the same job title. *Id.* (citing *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) ("The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies.")) Instead, a similarly situated comparator and the plaintiff will ordinarily (1) have engaged in the same basic conduct/misconduct; (2) have been subject to the same employment policy, guideline, or rule; (3) ordinarily

---

[7] The burden then shifts to the defendant to show a legitimate, non-discriminatory reason for its employment action. *Burke-Fowler*, 447 F.3d at 1323. If the defendant makes this showing, the burden shifts back to the plaintiff to prove the reason is pretext for unlawful discrimination. *Id.*

(although not always) have been under the jurisdiction of the same supervisor; and (4) share a similar employment or disciplinary history. *Id*. at 1227-28. The court chose the "all-material-respects standard [because it] serves the interest of sound judicial administration by allowing for summary judgment in *appropriate* cases– namely, where the comparators are simply too dissimilar to permit a valid inference that invidious discrimination is afoot." *Id.* at 1229.

In support of its improper comparator argument, StoneMor primarily relies on *Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985 (11th Cir. 2020).[8] There, the Eleventh Circuit affirmed the district court's Rule 12(b)(6) dismissal of the plaintiff's complaint because, among other reasons, the plaintiff had not identified a valid comparator. *Id.* at 991. The plaintiff, a police officer at an outpatient clinic, had engaged in a romantic relationship with a medical support assistant at the clinic. *Id.* at 987. The plaintiff believed his supervisor disapproved of this relationship and began a campaign of harassment designed to build a "paper trail" so he could fire the plaintiff. *Id.* The plaintiff was disciplined for multiple incidents involving his

---

[8] StoneMor also cites two of this court's prior opinions, both of which are distinguishable from the facts alleged in this case. In *Henderson v. City of Birmingham*, the plaintiff identified other similarly situated employees but alleged no facts suggesting how they were similar. No. 2:18-cv-2062; 2020 WL 230977 at *5 (N.D. Ala. Jan. 15, 2020). The plaintiff did give some detail for one alleged comparator for conduct which resulted in a letter of counseling, but the letter of counseling was not an adverse employment action. *Id.* Likewise, in *Hamby v. City of Birmingham,* the plaintiff did not identify alleged comparators for most of the allegedly adverse employment actions. No. 2:18-cv-01216-SGC, 2019 WL 6327720 at *6 (N.D. Ala. Nov. 26, 2019). The plaintiff did identify specific comparators for conduct which resulted in a one-day suspension; however, that one-day suspension did not rise to the level of an adverse employment action. *Id*.

workplace contact with the medical assistant, but he was also charged with other misconduct, including assaulting a superior, disobeying a police officer, and engaging in conduct unbecoming a police officer. *Id.* Ultimately, the plaintiff was terminated, but the medical assistant was not. In evaluating the plaintiff's claim, the court held that a police officer and medical support assistant were not proper comparators. *Id.* at 991. First, they held different jobs that might reasonably be held to different standards. *Id.* Second, the plaintiff was charged with several acts of misconduct not related to the medical assistant. *Id.* Finally, the plaintiff also worked in a different department, with different supervisors, and a different disciplinary decisionmaker. *Id.*

StoneMor claims Kughn and Floyd "have nothing in common" and points to four differences between them: (1) they had different supervisors (Kughn reported to Shoemaker, and Floyd reported to Kughn); (2) they had different jobs (Kughn was a manager, and Floyd was a mortician); (3) they had different levels of authority (Kughn could discipline Floyd, but Floyd had no disciplinary authority); and (4) they were accused of different misconduct (Kughn was accused of harassing Floyd, a direct report, but Floyd was accused of harassing other employees, not direct reports). (Doc. 8 at 7-8). In response, Kughn argues he and Floyd were similarly situated in all material respects except for race. (Doc. 15 at 9). They were both supervised by and had their discipline controlled by Shoemaker; they were both

accused of harassment and discrimination; and they were both subject to a performance improvement plan at Shoemaker's direction. (Doc. 15 at 9).

In considering the parties' arguments, the court is mindful of two things. First, Kughn's allegations must be accepted as true and construed in the light most favorable to him. *Butler*, 685 F.3d at 1265. Second, Kughn is not required to plead facts sufficient to meet a *prima facie* case under *McDonnell Douglas*. *Davis*, 516 F.3d at 974. Viewed through this lens, Kughn and Floyd are certainly not identical, but they are more similarly situated than the individuals in *Gilliam*. First, paragraphs 9 and 10 of Kughn's complaint imply Shoemaker directed discipline for both Kughn and Floyd, so Kughn has alleged both he and Floyd were under Shoemaker's jurisdiction. *See Lewis*, 918 F.3d at 1227. Kughn claims both he and Floyd were placed on performance improvement plans, so he has alleged they share similar disciplinary histories. And while not explicit, the complaint implies Kughn and Floyd worked in the same general area of StoneMor.

Whether Kughn has alleged he and Floyd engaged in the same misconduct is a closer call. Discrimination and harassment claims were made against both Kughn and Floyd, but StoneMor argues that allegations of harassing and discriminating a direct report are different from harassing and discriminating a non-subordinate. This is a fair distinction, but *Lewis* states a plaintiff and his comparator "will have engaged in the same *basic* conduct (or misconduct)." *Id.* (emphasis added). The

11

court in *Lewis* cited *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 580, 583 (6th Cir. 1992), which held that a plaintiff terminated for misusing an employer's property could not rely on a comparator who was absent and insubordinate. *See also Gilliam*, 822 F. App'x at 991 (a plaintiff terminated for assaulting a superior and engaging in conduct unbecoming a police officer could not rely on a comparator charged with engaging in a romantic relationship with a co-worker). Kughn's and Floyd's offending conduct may ultimately prove to be too different under the all-material-respects standard. But without the benefit of a factually developed record, the court cannot resolve this question in StoneMor's favor at this point. Kughn has sufficiently suggested Floyd is a proper comparator to survive a motion to dismiss for failure to state a claim. Therefore, StoneMor's motion to dismiss Count I of Kughn's complaint for § 1981 discrimination is **DENIED**.

### B. Retaliation

Absent direct evidence, courts also use the *McDonnell Douglas* burden-shifting framework to analyze retaliation claims. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Under this framework, a plaintiff establishes a *prima facie* case of retaliation by showing (1) he engaged in a protected activity, such as reporting harassment or other discrimination based on a protected characteristic, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment

action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Retaliation under § 1981 "includes retaliation for a plaintiff's opposition to race discrimination, whether or not he personally is the victim of race discrimination." *Tucker v. Talladega City Sch.*, 171 F. App'x 289, 295 (11th Cir. 2006). As with a disparate treatment claim, a plaintiff need not allege facts at the pleading stage sufficient to make out a *prima facie* case of retaliation under the *McDonnell Douglas* framework, but he must allege enough facts to suggest discriminatory retaliation. *Marshall v. Mayor & Alderman of City of Savannah, Ga.*, 366 F. App'x 91, 100 (11th Cir. 2010) (citing *Davis*, 516 F.3d at 974).

1. **Protected activity**

First, StoneMor argues Kughn's complaint should be dismissed because he does not allege facts sufficiently suggesting he engaged in a protected activity. StoneMor cites *Milner v. Team Health* to support its claim that Kughn has not sufficiently alleged Floyd's conduct rose to the level of race discrimination, and thus Kughn has not established he was opposing discrimination when he reported Floyd to Shoemaker. No. 2:19-cv-2041-GMB, 2020 WL 5658903 (N.D. Ala. Sept. 23, 2020). In *Milner*, the plaintiff alleged specific conduct that, even if true, did not amount to discrimination. *Id.* at *8. The plaintiff had also amended his complaint three times. *Id.* at *3. Here, StoneMor objects to Kughn's general description of

13

Floyd's conduct rather than arguing Floyd's conduct did not amount to race discrimination.

StoneMor also contends Kughn's report of Floyd's behavior is not a protected activity because it is covered by the manager rule, which "holds that a management employee, that, in the course of her normal job performance, disagrees with or opposes the actions of an employer does not engage in 'protected activity.'" *Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012). But both cases StoneMor cites involved a plaintiff employee whose job function included handling human resources issues, and both cases were decided on summary judgment. *Id.* at 784 (plaintiff was a loss prevention coach who was assigned responsibility for investigating another employee's sexual harassment claim); *Fletcher v. Supreme Beverage Co.*, No. 2:11-cv-00056-MHH, 2014 WL 5518294 (N.D. Ala. Oct. 31, 2014) (plaintiff was a human resources manager whose job responsibility included reporting employee claims of discrimination and harassment to upper management). At least in some circumstances, a manager-plaintiff can pursue a § 1981 retaliation claim, even where the underlying discriminatory conduct is directed at others. *See, e.g., CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (plaintiff was an assistant manager who complained a fellow assistant manager fired another employee for race-based reasons).

Again, the court must accept Kughn's allegations as true and view them in a light most favorable to him. Viewed in that light, Kughn's report to Shoemaker that Floyd was "harassing other employees because of their race" is not simply passing along complaints, particularly given Kughn's complaint suggests he was not a human resources employee. With the benefit of a full record, StoneMor's arguments may well have merit; for now, though, Kughn's reports to Shoemaker could qualify as protected activity.

### 2. Causal connection

StoneMor also argues Kughn has not shown a causal connection between his complaints about Floyd and his termination. To do so, Kughn must show decision-makers were aware of the activities and the activities and subsequent adverse employment actions were not "wholly unrelated." *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (internal quotation marks omitted). "Close temporal proximity" may be sufficient to show a protected activity and an adverse employment action were not "wholly unrelated." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotation marks omitted). However, temporal proximity, without more, must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (internal quotation marks omitted). When three or more months elapse between a protected activity and

an adverse employment action, the temporal proximity of the events is not "very close." *Id.*

In his response to StoneMor's motion, Kughn claims he complained about Floyd to Shoemaker as late as June/July 2019, but his complaint is not so clear. Kughn alleges Johnson complained about Floyd to both Shoemaker and Kughn in July 2019, but that is the only definitive date regarding the complaints about Floyd. (Doc. 1 at 3). Without some allegation as to when Kughn complained about Floyd to Shoemaker, the complaint does not provide a temporal-based causal connection between Kughn's complaints and his termination.

However, Kughn alleges he was told he was being terminated because employees complained about Floyd to HR. (Doc. 1 at 3). Taken as true, this could suggest a causal connection between Kughn's complaint about Floyd and his termination. Kughn claims Shoemaker instructed him to have employees complain directly to HR. If Kughn were then fired because the employees complained to HR, as he claims, that suggests Kughn's opposition to Floyd's alleged race discrimination and Kughn's termination are not "wholly unrelated." Kughn has sufficiently suggested he was terminated in retaliation for reporting Floyd's race-based discriminatory conduct. Consequently, StoneMor's motion to dismiss Count II of Kughn's complaint for § 1981 retaliation is **DENIED**.

## IV. Conclusion

For the foregoing reasons, StoneMor's motion to dismiss (Doc. 8) is **DENIED**. The parties had requested a stay of the discovery deadlines pending resolution of StoneMor's motion to dismiss, which the court granted. (Doc. 23). Accordingly, the stay is lifted, and the parties are **ORDERED** to meet and confer, within fourteen (14) calendar days of the date of entry of this Order, to propose new deadlines for discovery and dispositive motions. The parties should file a report of their planning meeting with twenty-one (21) calendar days of the date of entry of this Order.

**DONE** this 25th day of March, 2022.

/s/ Staci G. Cornelius
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE